IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHIRLEY MARTINEZ,

        **Plaintiff,**

vs.                                                Civ. No. 20-1024 JFR

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 21)[2] filed May 7, 2021, in connection with Plaintiff Shirley Martinez's *Motion to Reverse or Remand Administrative Agency Decision, With Memorandum of Law in Support* ("Motion"), filed July 26, 2021. Doc. 26. The Commissioner filed a response in opposition on October 22, 2021. Doc. 30. Plaintiff filed a reply on November 10, 2021. Doc. 31. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law, and being fully advised in the premises, the Court finds that Plaintiff's Motion is well taken. Therefore, it is **GRANTED** and this case is **REMANDED** for further proceedings.

### I. BACKGROUND

Plaintiff alleges she became disabled on September 27, 2017, at the age of 51 years and eight months, because of anxiety disorder, depression, heart problem(s), high blood pressure, and

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case. Docs. 34, 35, 36. This case was previously assigned to Magistrate Judge Karen B. Molzen. Docs. 3, 33.

[2] Hereinafter, the Court's citations to the Administrative Record (Doc. 19), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

high cholesterol, following a heart attack earlier that month.  Tr. 65-66, 395.  She completed ninth grade in June 1982, has no further education, and was previously employed as a house cleaner and maintenance worker.  Tr. 233-34.  Plaintiff last worked in 2013.  Tr. 244.

Plaintiff protectively applied for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 *et seq.* on December 18, 2017.[3]  Tr. 198.  On August 21, 2018, Plaintiff's claim for SSI was denied.  Tr. 109.  Plaintiff's claim was again denied at reconsideration on May 22, 2019.  Tr. 116.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically[4] before ALJ Monica J. Anderson on April 20, 2020.  Tr. 10, 39.  Plaintiff was represented by attorney Josh Eden at the hearing.[5]  Tr. 10, 39.  ALJ Anderson issued an unfavorable decision on May 27, 2020.  Tr. 7.  Plaintiff requested review by the Appeals Council.  Tr. 1.  On August 12, 2020, the Appeals Council denied Plaintiff's request for review, and upheld the ALJ's decision.  Tr. 1.  On October 7, 2020, Plaintiff timely filed a Complaint in this Court seeking review of the Commissioner's final decision.  Doc. 1.

## II. APPLICABLE LAW

**A.   Disability Determination Process**

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Commissioner has

---

[3] The record indicates that Plaintiff also applied for Disability Insurance Benefits pursuant to Title II of the Act, 42 U.S.C. § 401 *et seq.*  Tr. 207.  The decision on that application, however, does not appear to be at issue in this appeal.  *See* Doc 1 at 1; Doc. 26 at 1; Doc 30 at 2; Tr. 10.

[4] The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 10.

[5] Plaintiff is represented by attorney Francesca J. MacDowell in these proceedings.  Doc. 1.

adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have impairment(s) or a combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 CFR § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of a claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is

3

conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Serv.*, 933 F.3d 799, 801 (10th Cir. 1991).

**B.      Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotation marks and citation omitted). Likewise, "[e]vidence is not substantial if it . . . constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The reasons underlying the ALJ's decision must be "articulated with sufficient particularity to allow for judicial review." *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M. 2016). Further, the ALJ's decision must "apply the correct legal standard" and supply "a sufficient basis to determine that appropriate legal standards have been followed." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks and citation omitted). The Court does not "reweigh the evidence" or impose its judgment in place of the Commissioner's. *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).

### III. ANALYSIS

The ALJ made her decision that Plaintiff was not disabled at step five of the sequential evaluation.  Tr. 23-24.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application for SSI, December 18, 2017.  Tr. 12.  At step two, she found that Plaintiff had 11 severe impairments: affective disorder, anxiety disorder, degenerative disk disease, hypertension, ischemic heart disease, knee dysfunction, obesity, obstructive sleep apnea with hypoxia, post-traumatic stress disorder, somatic disorder, and status post-myocardial infarction.  Tr. 12.  She found that Plaintiff had three non-severe impairments: high cholesterol, insomnia, and restless leg syndrome.  Tr. 12.

At step three, the ALJ found that Plaintiff had moderate limitations in adapting or managing oneself, concentrating, persisting or maintaining pace, interacting with others, and understanding, remembering or applying information.  Tr. 14-15. The ALJ determined that Plaintiff's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 C.F.R. Part 404, Subpart 4, Appendix 1.  Tr. 13-15.  Therefore, she proceeded to step four of the sequential evaluation and found that Plaintiff had

> the RFC to perform a range of light work as defined in 20 C[.]F[.]R[.] 416.967(b) as follows: the claimant [can] lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit for 6 hours in an 8-hour workday and can stand and walk for 6 hours in an 8-hour workday.  She can occasionally operate foot controls with the bilateral lower extremities.  The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and bend.  She can never climb ladders, ropes, or scaffolds and must avoid unprotected heights and hazardous machinery.  She must avoid concentrated exposure to dust, fumes, gases, odors, poor ventilation, and other pollutants as well as concentrated exposure to extreme heat.  She must avoid uneven, rough, and vibrating surfaces.  The claimant is limited to unskilled work that is simple, routine, and repetitive.  She can deal with occasional changes to the work setting and occasional work-related decision-making.  She can deal with occasional interaction with the public, co-workers, and supervisors.  She cannot perform fast-paced production work, such as assembly-line type work.

Tr. 15-16.

The ALJ further found that Plaintiff could not perform any of her past relevant work, and therefore proceeded to step five of the sequential evaluation.  Tr. 22-23.  At this final step, the ALJ found that, in light of Plaintiff's "age, education, work experience, and [RFC], work exists in significant numbers in the national economy" that Plaintiff is able to perform.  Tr. 23.  Employing the testimony of a Vocational Expert ("VE") from Plaintiff's hearing, the ALJ found that a single job exists that fits these criteria: Office helper, listed in the Dictionary of Occupational Titles ("DOT") at 239.567-010 as light work with a Specific Vocational Preparation at Level 2.[6]  Tr. 23, 59.  The VE testified that there are approximately 150,000 such jobs nationally. Tr. 23, 59. The ALJ determined that "[t]his occupation by itself provides a significant number of jobs in the national economy."  Tr. 23.  Accordingly, the ALJ found that Plaintiff was not disabled.  Tr. 24.

As the basis of her Motion, Plaintiff argues broadly that the ALJ's decision is not supported by substantial evidence.  Doc. 26 at 11.  More specifically, Plaintiff rests her position on two errors she claims the ALJ made: (1) failure to properly weigh medical opinion evidence concerning her mental impairments; and (2) failure to reconcile an inconsistency between her RFC, the VE's testimony, and the information supplied by the DOT.  Tr. 11, 13-14.  For the reasons that follow, the Court agrees with Plaintiff that the ALJ erred by failing to reconcile an inconsistency between her RFC, the testimonial evidence from the VE, and the relevant occupational information from the DOT.  Therefore, the Court reverses the decision and remands this case for further proceedings.  Because the Court need not address issues unnecessary for the resolution of a motion, *see Wagner v. Lacy*, 12-CV-817, 12-CV-547, 2013 WL 12328852, at *3 (D.N.M. Nov. 18, 2013), it does not offer analysis on Plaintiff's first claim of error.  The Court

---

[6] 1991 WL 672232 (Jan. 1, 2016) ("Office helper").

first sets out the legal standards applicable to Plaintiff's Motion, then proceeds to discuss Plaintiff's argument that the ALJ failed to reconcile an inconsistency between her RFC, the VE's testimony, and the information supplied by the DOT.

**A.     Legal Standards**

    *1.     Medical Opinion Evidence*

The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "The most important factors . . . are supportability . . . and consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight [s]he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ need not discuss each factor articulated in the regulations; rather, the ALJ must merely explain her weighing decision with sufficient specificity so as to be capable of review. *See Langley*, 373 F.3d at 1119. Put differently, if the ALJ rejects an opinion, she "must then give 'specific, legitimate, reasons for doing so.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

    *2.     RFC Assessment*

A claimant's "RFC is an administrative finding of what an individual can do despite his or her limitations." *Spicer v. Barnhart*, 64 F. App'x 173, 175 (10th Cir. 2003). The "ALJ's RFC must be based on the entire case record, including the objective medical findings and credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). In assessing a claimant's RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). This assessment must be "based on all of the relevant and other evidence" in the record. C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." *Sullivan v. Colvin*, 519 F. App'x 985, 988 (10th Cir. 2013) (alterations omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Further, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *Wells v. Colvin*, 727 F.3d at 1065 (omission and internal quotation marks omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the Court will conclude that her RFC assessment is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *Spicer*, 64 F. App'x at 177-78.

**B.    There Exists An Inconsistency Between Plaintiff's RFC, the Testimony of the VE, and the Information from the DOT that the ALJ Must Reconcile**

The VE at Plaintiff's hearing before the ALJ testified that a hypothetical claimant with similar characteristics as Plaintiff would fall into an exertional level of "[l]ess than the full range

8

of light" work.  Tr. 58-59.  Given this limitation, the VE testified that Plaintiff could work as, *inter alia*, "an office helper."  Tr. 59-60.  The DOT states that the occupation of office helper requires Level 2 Reasoning, which requires the occupant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[ and d]eal with problems involving a few concrete variables in or from standardized situations."  1991 WL 672232.  Plaintiff's RFC, as determined by the ALJ and outlined in its entirety above, provides that she "is limited to unskilled work that is simple, routine, and repetitive" and "can deal with occasional changes to the work setting and occasional work-related decision-making."  Tr. 16.

Plaintiff argues that the relevant limitation in her RFC, as determined by the ALJ, is incongruous with the reasoning required of an office helper, as supplied by the DOT, and the testimony of the VE.[7]  Doc 26 at 13.  Specifically, Plaintiff contends that because an office helper is expected to "perform *detailed* work and deal with problems in such situations" and her RFC limited her to the performance of "simple, routine, and repetitive type work with only occasional decision-making," there is an essential conflict between the two.  Doc. 26 at 15 (emphasis in original).  Finally, Plaintiff uses this conflict to advance an argument that the ALJ erred in reaching her disability determination.  Doc. 26 at 13-14.  On this point, Plaintiff maintains that before relying on the VE's testimony that Plaintiff could work as an office helper, the ALJ was required to "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."

---

[7] There is a second dimension to Plaintiff's argument here, wherein she contends that the ALJ failed to harmonize the office helper position with her "limitations in interacting appropriately with co-workers and supervisors."  Doc. 26 at 15.  Given the Court's ultimate disposition and the necessity for the ALJ to reconcile the potential conflict between Plaintiff's RFC, the testimony of the VE, and the office helper position's Level 2 Reasoning requirement as set forth in the DOT, the Court finds it unnecessary to offer detailed analysis in this regard.

9

Doc. 26 at 14 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)).

SSRs "are agency rulings published under the authority of the Commissioner . . . and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 9 (1990) (internal quotation marks and citation omitted); *see also* C.F.R. § 402.35(b)(1). The SSR at issue here requires that, at a hearing, it is incumbent upon the ALJ "to fully develop the record [and] inquire, on the record, as to whether or not there is such consistency" between evidence of occupations applicable to disability claimants educed from the VE and the "occupational information supplied by the DOT." SSR 00-4p, 2000 WL1898704, at *2. Indeed, the SSR requires the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.*

On these requirements, the Court is met with a silent record. The Commissioner does not direct the Court to a portion of the record where the ALJ resolved a perceived inconsistency between the evidence taken from the VE, i.e., that office helper was a job that a hypothetical claimant with characteristics similar to those of Plaintiff could work, and the information on this occupation contained in the DOT, nor does the Commissioner argue that the ALJ did in fact identify and cure such friction. Rather, the Commissioner argues that there is no inconsistency between the two. Doc. 30 at 7. As support for their respective positions, both Plaintiff and the Commissioner direct the Court to the Tenth Circuit's holding in *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005). The Court views *Hackett* as instructive.

According to her RFC, the claimant in *Hackett* had the requisite "attention, concentration, persistence and pace levels required for simple and routine work tasks." *Id.* at 1176 (internal

10

quotation marks and citation omitted). The VE testified that the claimant could perform work as a "call-out operator" or a "surveillance-system monitor"—both occupations with a Level 3 Reasoning requirements. *Id.* at 1175-76. The claimant argued, in relevant part, that the ALJ did not reconcile the VE's testimony with the occupational descriptions contained in the DOT, contrary to SSR 00-4p. *Id.* at 1175. The Tenth Circuit noted that, for both occupations at issue, call-out operator and surveillance system monitor, the DOT defined the reasoning requirement "as the ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or form standardized situations." *Id.* at 1176 (alteration, internal quotation marks, and citation omitted). It held that the claimant's skill-level limitation to "simple and routine work tasks . . . seem[ed] inconsistent with the demands" imposed by occupations with a Level 3 Reasoning requirement, and that claimant's RFC made her better-suited for occupations with a Level 2 Reasoning requirements instead. *Id.* (internal quotation marks and citation omitted). The claimant's case was therefore remanded to allow the ALJ to harmonize this "apparent conflict." *Id.* In reaching its holding, the Tenth Circuit relied on authority from a sister circuit, which rebuffed an argument "that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category" demand reasoning equal to or in excess of Level 2. *Id.* (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)).

Nearly 12 years later, the Tenth Circuit reinforced its holding in *Hackett*, noting again that "a limitation to simple and routine work tasks seems inconsistent with the demands of [Level 3 R]easoning" requirements. *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (omission, internal quotation marks, and citation omitted). Just as in *Hackett*, the Eighth

11

Circuit's holding in *Lucy* was again invoked: "While we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation in carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions in inconsistent with both [L]evel [2] and [L]evel [3 R]easoning." *Paulek*, 662 F. App'x at 594.  Here, the conflict alleged by Plaintiff arises at the intersection of her limitation to work that is "simple, routine, and repetitive" and the expectation that an office helper can "perform *detailed* work and deal with problems in such situations."  Doc 26 at 15 (emphasis in original).

      Here, contrary to the Commissioner's argument, there is a potential conflict between Plaintiff's RFC as determined by the ALJ, the testimony of the VE, and the information provided by the DOT.  In the Court's view, Plaintiff's limitations in reasoning, as outlined by the ALJ in Plaintiff's RFC, do not unequivocally align with what is required of an office helper, as described by the DOT.  More specifically, the Court is persuaded that a limitation "to unskilled work that is simple, routine, and repetitive" and to only "occasional work-related decision-making" may be in conflict with an occupation that requires exertion of "commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations."  Tr. 16; 1991 WL 672232.

      The Court is likewise unpersuaded by the authority relied upon by the Commissioner in support of his position that there is no conflict here.  The Commissioner relies on *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008) for the proposition that there is no incongruity between "'limitation to simple, repetitive and routine work'" and jobs that require Level 2 Reasoning.  Doc. 30 at 7 (quoting *Stokes*, 274 F. App'x at 684).  There, it does not appear that the claimant argued that the ALJ failed to resolve a conflict between her RFC, the testimony of the VE, and

occupational information found in the DOT.  *See Stokes*, 274 F.App'x at 684 (framing the claimant's argument as a request to strictly construe a "limitation to simple, repetitive, and routine work" as a restriction solely to jobs with a Level 1 Reasoning requirement).  The Court does not read this case to impose a bright-line rule that such conflict can never exist, as the Commissioner suggests.  But, even assuming *arguendo* that such a directive was intended, the Court takes guidance from the Tenth Circuit's more recent decision in *Paulek*, and the approach taken in this District and others in this Circuit.

Recently, this District issued a decision that speaks to the question at issue.[8]  There, the Court relied on *Paulek* in reaching a conclusion that remand was warranted where the ALJ failed to resolve a conflict between the VE's testimony and the DOT's job descriptions for the occupations identified as performable by the claimant.  *Flores v. Berryhill*, 16-CV-279, 2017 WL 3149353, at *5, *8 (D.N.M. June 2, 2017).  While acknowledging that *Paulek* was "not dispositive" of the issue at hand, *Flores* reasoned that

> it is . . . instructive that the Tenth Circuit has considered there may be situations where a limitation to "simple" could preclude even [L]evel[] [2] [R]easoning jobs. Moreover, the Tenth Circuit determined in *Hackett* that [L]evel[] [2] [R]easoning jobs *appeared* to be more consistent with a claimant's ability to do simple and routine work tasks, but did not decisively foreclose the possibility there may be factual circumstances where [L]evel [2] [R]easoning jobs could be inconsistent with a claimant's ability to perform simple tasks.

2017 WL 3149353, at * 8 (citing *Hackett*, 395 F.3d at 1176).  Thus, the case was remanded "in light of the . . . holding in *Paulek*" for "further inquiry . . . into whether [the claimant]'s limitation to simple work-related decisions is consistent with [L]evel [2] [R]easoning jobs." *Id.*

---

[8] The Court recognizes that there is at least a surface distinction between a claimant's ability to follow simple instructions and his/her ability to carry out simple tasks. *See Begaye v. Berryhill*, 16-CV-281, 2017 WL 3822078, at *7 (D.N.M. Aug. 29, 2017) (observing that in *Lucy*, the Eighth Circuit "liken[ed] simple *instructions* to simple *work*" (citing *Lucy*, 113 F.3d at 909) (emphases in original)).  Nevertheless, given the discussion in *Flores*, the focus of the Court's discussion is the term "simple." *See* 2017 WL 3149353, at *8.

Other recent decisions in this Circuit lend support to this approach. In *Dugan v. Berryhill*, 17-2165-SAC, 2018 WL 1400448 (D. Kan. Mar. 20, 2018), the claimant argued that a Level 2 Reasoning job identified by the ALJ as performable by him was in conflict with the ALJ's RFC finding that he "could understand, remember and carry out short, simple instructions and work tasks." *Id.* at *5. Noting that both *Paulek* and *Hackett* approvingly cite the Eighth Circuit's decision in *Lucy*, *Dugan* found that the DOT's information for occupations with a Level 2 Reasoning requirement, at least facially, "reasonably appears to conflict with a person being limited to understanding, remembering and carrying out simple work instructions." *Id.* at *6 (citing *MacDonald v. Berryhill*, 16-2594-SAC, 2018 WL 806221 (D. Kan. Feb. 9, 2018), and *Johnson v. Berryhill*, 16-4185-SAC, 2017 WL 6508944 (D. Kan. Dec. 20, 2017)). The case was therefore remanded for additional proceedings:

> Because of this conflict, the ALJ erred by failing to inquire about and resolve this conflict. The case shall therefore be remanded in order for the ALJ to inquire about and resolve the conflict between the ALJ's RFC findings, the VE's testimony and the description of the [Level 2 Reasoning] job in the DOT.

*Dugan*, 2018 WL 1400448, at *6. Earlier this year, the District of Colorado relied on *Dugan* to take the same approach, noting that the Level 1 Reasoning requirement

> explicitly discusses simple instructions by stating that a claimant must be able to carry out simple one-or two-step instructions, while a [R]easoning [L]evel of 2 does not mention simple instructions, but, rather, states that a claimant must be able to carry out *detailed* but uninvolved written or oral instructions. Thus, the plain language of these reasoning levels suggests that jobs with [L]evel 2 [R]easoning skills require one to comply with *detailed* instructions rather than mere simple instructions. While the [c]ourt does not find that simple instructions necessarily precludes jobs with [L]evel 2 [R]easoning skills, the [c]ourt does find, pursuant to *Hackett*, that the ALJ must explain the apparent discrepancy.

*C.H.C. v. Commissioner*, 20-CV-2428, 2022 WL 950433, at *8 (D. Colo. Mar. 29, 2022) (emphases added) (internal quotation marks omitted) (citing *Hackett*, 395 F.3d at 1176); *see also Ashley C. O. v. Saul*, 17-CV-675, 2020 WL 5229701, at *2 (N.D. Okla. Sept. 2, 2020) (finding

14

persuasive the claimant's argument that a job with a Level 2 Reasoning requirement was inconsistent with RFC limitations to "simple, repetitive tasks" and remanding the case for further proceedings because the ALJ failed to "inquire[] about or resolve[] the apparent conflicts between [the claimant's] RFC and the jobs identified by the VE." (internal quotation marks and citation omitted); *Linda M. P. v. Saul*, 17-CV-409, 2020 WL 2840243 (N.D. Okla. June 1, 2020) (same).

For these reasons, the Court accepts Plaintiff's argument, and finds that because Plaintiff's RFC, as determined by the ALJ, limited her to "simple, routine, and repetitive" work, yet the ALJ found that Plaintiff could perform work as an office helper, with a Level 2 Reasoning requirement, which demands the ability "to carry out detailed but uninvolved written or oral instructions," there is a potential conflict between Plaintiff's RFC, the testimony from the VE concerning Plaintiff's occupation potential, and the DOT information on the reasoning level required for an office helper. Tr. 16, 23; 1991 WL 672232. Therefore, remand for additional proceedings is required. *See Hackett*, 395 F.3d at 1168.

## IV. CONCLUSION

In light of the ALJ's failure to reconcile inconsistencies between Plaintiff's RFC, the testimony of the VE, and the information from the DOT, Plaintiff's Motion is **GRANTED**, and this case is **REMANDED** for additional proceedings.

**IT IS SO ORDERED.**

_____
JOHN F. ROBBENHAAR
United States Magistrate Judge,
Presiding by Consent